IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| DYAMOND DAVIS on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | No. 18-2246 |
| v. ) ) | |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES, ) ) | JURY DEMAND |
| Defendants. ) | |

## COMPLAINT

### INTRODUCTORY STATEMENT

1. Plaintiff, Dyamond Davis ("Davis"), on behalf of herself and all others similarly situated, through her attorneys, bring this complaint pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA") against the Illinois Department of Human Services ("DHS"). Davis and other similarly situated employees were approved for FMLA; yet, denied the exercise of or the attempt to exercise FMLA protections.

### JURISDICTION

2. This Court has jurisdiction over Davis' collective action claim which arises under 29 U.S.C. § 2617(a)(2)(B), pursuant to 28 U.S.C. § 1331.

3. This Court is the appropriate venue under 28 U.S.C. § 1391(b) and CDIL-LR 40.1, in that the Defendant is subject to personal jurisdiction in this District, and the events giving rise to this Complaint occurred in Kankakee County in the Urbana Division.

## PARTIES

4. Plaintiff, Dyamond Davis resides in Tinley Park, IL and during her employment worked at the DHS location at the Shapiro Developmental Center, 100 East Jeffery St., Kankakee, Illinois ("Shapiro") where all the events giving rise to this Complaint arose.

5. Defendant, DHS is an interstate governmental agency of the State of Illinois with locations throughout the State of Illinois including Shapiro where Davis worked.

6. Davis was employed by DHS at Shapiro between May 2015 and September 2017.

## STATEMENT OF LAW

7. The FMLA entitles employees to take up to 12 weeks of unpaid leave during any 12 month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(A).

8. An "eligible employee" under the FMLA is an employee who has been employed:

   a. "for at least 12 months by the employer with respect to whom leave is requested"; and

   b. "for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2511(2)(a).

9. An interstate governmental agency of the state is a "public agency." and an "employer" within the meaning of 29 U.S.C. § 2611(4)(A)(iii) and (B).

10. DHS employs over 50 or more employees at Shapiro for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

11. It is unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's FLMA rights. 29 U.S.C. § 2615(a)(1).

## STATEMENT OF FACTS

12. In late April 2017, Davis had consecutive absences or left work early due to illness.

13. After leaving work early on or about April 29, 2017 Davis went to urgent care where she learned she was pregnant.

14. On or about June 2, 2017, Davis was approved for FMLA effective May 4, 2017. Ex. 1

15. During the prior three years, other employees at Shapiro have been approved for FMLA.

16. On May 12, 2017, Davis told the assistant to the dietary manager, Rebecca Irby that she was sick and unable to work because of her pregnancy.

17. Irby told Davis she would document her request as FMLA.

18. Davis later learned the missed time on May 12 was treated as 3 hours of holiday leave and 30 minutes as an unexcused absence ("UA").

19. No time was designated as FMLA leave.

20. Davis had 12 weeks of FMLA time available at the time of her absence on May 12, 2017.

21. During the prior three years, other employees at Shapiro were approved for FMLA and with FMLA time available had FMLA qualifying absences.

22. However, when the employee requested FMLA leave for qualifying absences, DHS denied the employee FMLA leave; and instead, DHS used the employees' other available paid leave time or designated the absences UA.

23. When Davis asked the Dietary Manager, Dave Casteel why she could not use the time as FMLA leave, Casteel responded, Shapiro's policy requires her to use her paid leave first. Ex. 2

24. When other employees at Shapiro approved for FMLA with FMLA time available asked why they could not use FMLA for FMLA qualifying absences, they were told it is Shapiro's policy to require employees to use their paid leave first.

25. In mid-June, Davis attempted to schedule FMLA time for an appointment with her obstetrician ("OB-GYN") for June 13, 2017.

26. Davis used DHS' abbreviation for FMLA "LF" on the employer's form to request this time as FMLA. Ex. 3

27. Casteel drew a line through the FMLA abbreviation and wrote on top of it "VAC" for vacation leave time. Ex. 3

28. Once the form was returned to Davis again, she asked Casteel the reason the abbreviation for FMLA was stricken.

29. Casteel responded, she had to use her available paid leave before she could use unpaid leave time. Ex. 2

30. Davis was charged with 5 hours and 30 minutes of vacation time for the June 13th doctor's appointment.

31. No time was designated as FMLA leave for Davis' June 13, 2017 absence.

32. During the prior three years, other employees at Shapiro approved for FMLA with FMLA time available attempted to schedule FMLA time for FMLA qualifying appointments by writing "LF" on the employer's request form for time off.

33. The employees' manager drew a line through the FMLA abbreviation and in its place inserted any available paid leave or designated the absence as UA.

34. Before work began on June 29, 2017, Davis called Casteel and advised him she had an appointment with her OB-GYN and she would need to leave work early.

35. She requested to use FMLA.

36. Again, she was told, if she had paid time available, she had to use it first. Ex. 2

37. Casteel volunteered to contact timekeeping to determine Davis' available paid leave.

38. Casteel told her she had vacation and other paid leave available for the appointment.

39. Davis selected vacation time to cover the absence.

40. When Davis received her timekeeping report, she learned she had no vacation time available for the June 29 absence.

41. She was charged with 5 hours 30 min of UA.

42. On or about September 15, 2017, Davis' employment was terminated for abuse of time for the 30 minutes of UA on May 12 and 5 hours and 30 minutes of UA on June 29, 2017. Ex. 4

43. During the prior three years, other employees at Shapiro approved for FMLA and with FMLA time available, exercised or attempted to exercise FMLA for a FMLA qualifying event; yet, were told they could not use FMLA because they had available paid leave.

44. Some or all FMLA qualifying absences were not designated as FMLA, but as paid leave or as an unauthorized absence.

45. During the prior three years, other employees at Shapiro approved for FMLA and with FMLA time available were disciplined, including and up to termination for abuse of time for FMLA qualified absences not designated FMLA leave but as UA.

## CLAIM FOR RELIEF

## INTERFERENCE WITH FMLA RIGHTS UNDER 29 U.S.C. § 2615(a)(1)

46. Davis incorporates and realleges paragraphs 1-45 above, as if fully set forth herein.

47. At all relevant times, Davis was approved for FMLA and had FMLA time available.

48. Davis was not allowed to use FMLA to cover her absences on May 12, June 13 and June 29, 2017.

49. DHS interfered with Davis' rights under the FMLA when it denied her the use of FMLA for her covered absences.

50. DHS violated the FMLA when it disciplined and ultimately terminated Davis for her absences on May 12 and June 29, 2017.

51. DHS's interference with Davis' FMLA rights caused Davis to lose wages and other benefits she would have earned had she been allowed to take FMLA leave and continue to work for DHS.

52. During the prior three years and at all relevant times, there were other similarly situated employees employed by DHS, at Shapiro, who were approved for FMLA and had FMLA time available.

53. Other similarly situated employees were not allowed to use FMLA to cover FMLA qualifying absences.

54. DHS interfered with other similarly situated employees' rights under FMLA when it denied them the use of FMLA for their covered absences.

55. DHS violated the FMLA when it disciplined up to and including terminating other similarly situated employees for FMLA qualifying absences.

56. DHS's interference with other similarly situated employees' FMLA rights caused them to lose wages and other benefits they would have earned had they been allowed to take FMLA leave.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff, Dyamond Davis requests for herself and other similarly situated employees that this Court:

A. Award her and other similarly situated employees who opt-in to this action pursuant to 29 U.S.C. § 2617(a)(2)(B) all lost wages and benefits;

B. Award her and other similarly situated employees pre-and post-judgement interest on the above amount at the prevailing rate;

C. Award her and other similarly situated employees liquidated damages equal to the amount of loss wages and benefits, plus interest;

D. Award her and other similarly situated employees equitable relief in the form of a tax component to offset negative tax consequences of lump sum damages;

E. Award her and other similarly situated employees reinstatement to their former position or, if reinstatement is not feasible, a reasonable amount of front pay;

F. Award her and other similarly situated employees reasonable costs and attorney's fees; and

G. Grant such other relief as this Court deems just and proper.

8

                                                                             Respectfully Submitted,

                                                                             _/s Tammy J. Lenzy_
                                                                             Attorney for Plaintiffs

Tammy J. Lenzy (Lead Counsel)
Legal Counsel PC
1018 W. Madison, Suite 3
Chicago, IL 60607
(312) 624-9973