IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| DYAMOND DAVIS on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 18-cv-2246 ) |
| v. | ) 1 ) |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES, | ) ) |
| Defendants. | ) ) |

## SECOND AMENDED COMPLAINT

### INTRODUCTORY STATEMENT

1.  Plaintiff, Dyamond Davis ("Davis"), through her attorneys, files her Second Amended Complaint for damages and Class Action relief as representative party on behalf of all employees with paid leave available that were approved for FMLA; yet, denied the exercise of or the attempt to exercise FMLA protections for FMLA qualifying absences because of Defendant, Illinois Department of Human Services("DHS") Shapiro Policy 6/2. Davis brings this complaint under Rule 23 of the Federal Rules of Civil Procedure and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA").

### JURISDICTION

2.  This Court has jurisdiction over Davis' claim which arises under 29 U.S.C. § 2617(a)(2)(B), pursuant to 28 U.S.C. § 1331.

3.  This Court is the appropriate venue under 28 U.S.C. § 1391(b) and CDIL-LR 40.1, in that the Defendant is subject to personal jurisdiction in this District, and the events giving rise

to this Complaint occurred in Kankakee County in the Urbana Division at the DHS location at the Shapiro Developmental Center, 100 East Jeffery St., Kankakee, Illinois ("Shapiro").

## PARTIES

4. Plaintiff, Dyamond Davis resides in Tinley Park, IL and while employed with DHS worked at Shapiro.

5. During the operative time period Plaintiff was approved for FMLA and with FMLA time available had FMLA qualifying absences. Because Plaintiff had paid benefit leave available she was restrained from using FMLA because of DHS Shapiro Policy 6/2 which requires exhaustion of paid leave before using FMLA.

6. The collective class sought to be certified is defined as:

**Employees at Shapiro during the past 3 years with paid leave available and approved for FMLA, had FMLA time available and had an FMLA qualifying absence; yet, restrained from using FMLA because of Shapiro Policy 6/2.**

7. Defendant, DHS is an interstate governmental agency of the State of Illinois with locations throughout the State of Illinois including Shapiro where it has adopted Shapiro Policy 6/2.

## STATEMENT OF LAW

8. Subject to section 2613 of the FMLA, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

(B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C)  In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

(E) Because of any qualifying exigency (as the Secretary shall, by regulation, determine) arising out of the fact that the spouse, or a son, daughter, or parent of the employee is on covered active duty (or has been notified of an impending call or order to covered active duty) in the Armed Forces.  29 U.S.C. § 2612(a)(1)(A).

9. an "eligible employee" under the FMLA is an employee who has been employed:

   a. "for at least 12 months by the employer with respect to whom leave is requested"; and

   b. "for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).

10. An interstate governmental agency of the state is a "public agency." and an "employer" within the meaning of 29 U.S.C. § 2611(4)(A)(iii) and (B).

11. DHS employs approximately 1,100 or more employees at Shapiro for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

12. It is unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's FLMA rights.  29 U.S.C. § 2615(a)(1).

## STATEMENT OF FACTS

13. Shapiro Policy 6/2 provides

    a. "Employees must utilize ALL accrued paid benefit time before applying for unpaid FMLA…to cover FMLA related absences." [emphasis found in original text]

3

    b.    FMLA leave requested for an FMLA qualifying absence before the employees accrued paid benefit time is exhausted is designated as an unauthorized absence and is subject to disciplinary action.

    c.    An unauthorized absence is an absence for which the time off is not approved.

    d.    If employees request to use paid accrued benefit time and do not have available the specific benefit time requested to cover the absence, the absence will remain unauthorized (UA), whether or not it is an FMLA related absence, and disciplinary action may be taken.

    e.    Repeated requests to use FMLA prior to exhausting all paid accrued benefit time may result in disciplinary action.  Shapiro Policy 6/2

14.    On or about June 2, 2017, Davis was approved for FMLA effective May 4, 2017.

15.    On May 12, 2017, Davis told the assistant to the dietary manager, Rebecca Irby she was sick and unable to work because of her pregnancy.

16.    Irby told Davis she would document her request as FMLA.

17.    Davis later learned the missed time on May 12 was treated as 3 hours of holiday leave and 30 minutes as an unexcused absence ("UA").

18.    No time was designated as FMLA leave for Davis' FMLA qualifying absence.

19.    Davis had 12 weeks of FMLA time available at the time of her absence on May 12, 2017.

20.    When Davis asked the Dietary Manager, Dave Casteel why she could not use the time as FMLA leave, Casteel responded, Shapiro's policy requires her to use her paid leave first.

21.    In mid-June, Davis attempted to schedule FMLA time for an appointment with her obstetrician ("OB-GYN") for June 13, 2017.

22.    Davis used DHS' abbreviation for FMLA "LF" on the employer's form to request this time as FMLA.

4

23. Casteel drew a line through the FMLA abbreviation and wrote on top "VAC" for vacation leave time.

24. Once the form was returned to Davis again, she asked Casteel the reason the abbreviation for FMLA was stricken.

25. Casteel responded, she had to use her available paid leave before she could use unpaid leave time.

26. Davis was charged with 5 hours and 30 minutes of vacation time for the June 13th doctor's appointment.

27. No time was designated as FMLA leave for Davis' June 13, 2017 FMLA qualifying absence.

28. Before work began on June 29, 2017, Davis called Casteel and advised him she had an appointment with her OB-GYN, and she would need to leave work early.

29. She requested to use FMLA.

30. Again, she was told, if she had paid time available, she had to use it first.

31. Casteel volunteered to contact timekeeping to determine Davis' available paid leave.

32. Casteel told her she had vacation and other paid leave available for the appointment.

33. Davis selected vacation time to cover the absence.

34. When Davis received her timekeeping report, she learned she had no vacation time available for the June 29 absence.

35. She was charged with 5 hours 30 min of UA.

36. On or about September 15, 2017, Davis' employment was terminated for attendance violations.

37. During the operative time period putative Collective Class Members were subject to Shapiro Policy 6/2.

38. During the operative time period putative Collective Class Members had FMLA time available, requested or attempted to request FMLA leave for FMLA qualifying absences, and were prevented or restrained from taking FMLA because of Shapiro Policy 6/2.

39. When putative Collective Class Members with paid benefit time available requested FMLA for a FMLA qualifying absence, putative Collective Class Members were charged with an unauthorized absence because of Shapiro Policy 6/2.

40. During the operative time period, putative Collective Class Members who requested to use paid accrued benefit time for FMLA qualifying absences and the requested benefit time was not available, the putative Collective Class Members were charged with an unauthorized absence because of Shapiro Policy 6/2.

41. During the operative time period, putative Collective Class Members were disciplined, including and up to termination for attendance violations for FMLA qualified absences because of Shapiro Policy 6/2.

42. During the operative time period, putative Collective Class Members were disciplined, including and up to termination for repeatedly requesting to use FMLA leave for FMLA qualifying absences when they had available paid leave because of Shapiro Policy 6/2.

43. DHS Shapiro Policy 6/2 as written and implemented is an unlawful and willful restraint and interference on Davis and other putative Collective Class Members use of FMLA.

## CLASS ACTION ALLEGATIONS

44. Over 400 hundred employees, of the approximately 1,100 at Shapiro during the operative period, had paid leave available and were approved for FMLA.

45. These employees like Davis were subject to Shapiro Policy 6/2; thus, were willfully denied and/or restrained from using FMLA for qualifying absences.

46. As a result, the putative collective class is so numerous that joinder of all members is impracticable.

47. This claim involves a written policy that is applicable to every employee approved for FMLA with paid leave available.

48. DHS offers over 5 paid leave options.

49. Most, if not all employees approved for FMLA would also have paid leave available; therefore, FMLA leave is reduced to an illusory promise because of Shapiro policy 6/2.

50. Davis and putative Collective Class Members interference claims result from the application of a systemic policy and practice of DHS, which are not dependent on the personal circumstances of each putative Collective Class Members exercise of FMLA.

51. As an employee with paid leave available and approved for FMLA, Davis' claim of interference is typical of the claims of the putative Collective Class Members.

52. Davis will fairly and adequately protect the interest of the class. She has no interests contrary to, or in conflict with, the putative Collective Class Members.

53. Like each putative Collective Class Member, Davis has an interest in obtaining the relief the FMLA provides and preventing DHS from using Shapiro Policy 6/2. Although the issue

of damages may be somewhat individual in nature, there is no detraction from the common nucleus of liability facts.

54. The precise size and the identity of other class member is ascertainable from business records and/or personnel records maintained by DHS.

55. A class action is superior to other available means for fair and efficient adjudication of this lawsuit.

56. Even if, some members could afford individual litigation against DHS, it would be unduly burdensome to the judicial system, and it could result in a multiplicity of lawsuits that would create hardship to putative Collective Class Members, DHS and to the Court.

57. The questions of law and fact common to each of the members of the collective class predominate over any questions affecting solely the individual members such as, whether Shapiro 6/2 violates the FMLA and whether requiring employees to exhaust paid leave before using FMLA is a willful violation of the FMLA; thus, making a class action superior to other available methods for the fair and efficient adjudication of this controversy. See Fed. R. Civ. Proc. 23(b)(3).

58. DHS's interference with Davis' and putative Collective Class Members' FMLA rights caused loss wages, salaries and other benefits of employment they would have earned had they been allowed to take FMLA leave and continue to work for DHS.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff, prays for relief as follows:

A. An Order designating Plaintiff and the putative Collective Class Members as a collective class action under the FMLA and/or Fed. R. Civ. P.23;

B. An Order appointing Plaintiff and her counsel to represent the interest of the collective class;

C. An order finding DHS liable to Plaintiff and the collective class for willful interference with their FMLA rights.

D. Award Plaintiff and the collective class pursuant to 29 U.S.C. § 2617(a)(1) any wages, salaries and employment benefits or other compensation denied or loss etc.;

E. Award Plaintiff and the collective class liquidated damages equal to the amount of their loss wages and benefits, plus interest;

F. Award Plaintiff and the collective class pre-and post-judgement interest on the above amounts at the highest available rates;

G. Award Plaintiff and the collective class equitable relief in the form of a tax component to offset negative tax consequences of lump sum damages;

H. Award Plaintiff and the collective class reinstatement to their former positions or, if reinstatement is not feasible, a reasonable amount of front pay;

I. Award Plaintiff and the collective class reasonable costs and attorney's fees; and

J. Grant such other relief as this Court deems just and proper.

Respectfully Submitted,

  /s Tammy J. Lenzy
Attorney for Plaintiffs

Tammy J. Lenzy (Lead Counsel)
Legal Counsel PC
936 W. Madison, #3C
Chicago, IL 60607
(312) 624-9973
tjlenzy@legalcounselpc.net