EXHIBIT 3

FILED DATE: 7/25/2018 3:42 PM  2018CH07730

## BEFORE THE CIVIL SERVICE COMMISSION, STATE OF ILLINOIS

| | | |
|---|---|---|
| ILLINOIS DEPARTMENT OF HUMAN SERVICES, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | DA-15-18 |
| DYAMOND DAVIS, | ) ) ) | Administrative Law Judge: |
| Respondent. | ) | *Andrew C. Barris* |

REPRESENTING PETITIONER:  Honorable Lisa Madigan, Illinois Attorney General, 100 West Randolph Street, 13th Floor, Chicago, Illinois 60601; Ms. Kristina D. Dion, Assistant Attorney General.

REPRESENTING RESPONDENT:  Tammy J. Lenzy, Legal Counsel PC, 936 W. Madison St., #3C, Chicago, Illinois 6067; Ms. Tammy J. Lenzy.

### PROCEEDINGS

This is the Respondent Dyamond Davis' (Davis) appeal of her discharge from the Illinois Department of Human Services (DHS) position of Support Service Worker effective September 15, 2017. Davis filed her discharge appeal within 15 days of her effective date of discharge and a hearing was scheduled within 30 days. After a request for a continuance by the Respondent, a hearing on this matter was held December 5, 2017. David Casteel, Rhonda Petty, and Gina LoGalbo were called as witnesses by the Petitioner. Rebecca Irby and Davis were called as witnesses by the Respondent. Upon agreement of the parties, the parties presented oral closing statements via telephone on February 23, 2018.

1

## FINDINGS OF FACT

1. Davis had a continuous service date of May 1, 2015. The Statement of Charges is attached as Exhibit 1 and lists Davis' prior discipline. Prior to her discharge, Davis was suspended 47 days[1] for unauthorized and/or unexcused absences in two years of employment at Shapiro. Other than her use of time, Davis' performance evaluations met or exceeded the expectations of her position.

2. In sum, Davis worked at the Shapiro Developmental Center (Shapiro). Shapiro is a full-time facility that houses approximately 480 residents with developmental disabilities. Shapiro has approximately 1,100 employees.

3. Davis was a Support Service Worker at Shapiro who was discharged on September 15, 2017 for time abuse violations on May 12, 2017 and June 29, 2017.[2]

4. Employees at Shapiro can apply for a leave of absence under the Family Medical Leave Act (FMLA). In sum, FMLA allows employee to take unpaid, job-protected leave for specific medical reasons. At some point in May 2017, Davis applied for FMLA and it was approved on June 1. Davis' FMLA was approved for "Appointments," one time per month, for a duration of two hours. There were no "overtime restrictions," nor an "anticipated recovery period." Based upon the documentation provided by Davis' doctor in her request for FMLA, Davis was not approved to use FMLA time for any "possible flare-ups."

5. It should be noted that witnesses for the Petitioner testified to the staffing issues unauthorized absences have on the facility. However, there is no direct evidence that Davis' absences caused such issues on May 12 or June 29.

---

[1] The Petitioner argued that Davis had previously been suspended a "whopping 88 days." This argument is rejected as it appears the Petitioner combined Davis' tardiness suspensions with her unauthorized absence suspensions. However, Davis' was not discharged for tardiness infractions in this case.

[2] All relevant dates regarding the unauthorized absences at issue occurred in 2017.

2018CH7730, Dyamond Davis, 000529
Davis v. IDHS (18-2246) Document No.:    000536

### David Casteel

6. David Casteel (Casteel) testified that he is the Dietary Manager 1 at Shapiro.

7. Casteel supervised Davis and described her duties as follows:

> To work in the department doing food preparation or minor food preparation, such as assembling cold food items for the menu. The afternoon shift is primarily responsible for the dinner meal. It would require working in the dish room, assembling food items for bulk sack lunch. It would require sweeping and mopping floors and other duties as assigned.

8. In sum, Casteel testified that Davis was discharged for unauthorized absences on the dates listed in the charges. Casteel indicated Davis called off work but did not have enough benefit time to cover her absences. Casteel explained the call off procedure at Shapiro as follows:

> [I]f a person calls off and does not have benefit time available when they first call off, they are considered UA, unauthorized absence, until the time is corrected. When the employee is responsible to know their benefit time, they submit a time-off request and a corrections slip. And at that point, the supervisor would – it would have been my responsibility to sign or assign approving those time-off requests. At such time, those are sent to the timekeeping department. And if the timekeeping department enters into the system, if it comes back from the timekeeping department that the person does not have time available, then disciplinary action is taken upon that.

9. As to the procedure to be followed when an employee leaves early for the day, Casteel testified:

> They have to notify the supervisor that they are leaving, and they have to state a reason why they're leaving. And then the supervisor will document what time the person – the person has to sign out, what time they leave. The supervisor will

document and notify – if it's when a – the supervisor – the shift supervisor will

notify myself or Ms. Irby of a person leaving and why they're leaving.

10. As to the procedure when an employee is going to be late for a shift, Casteel testified:

They – they are required to call within an hour ahead of time to call off. But if they're going to be late, they should call ahead of time and state that they're going to be late. And then upon arrival, they can – we can mitigate someone being late if they have justifiable cause for being late.

11. As to the procedure to be followed when an employee is going to miss work and use FMLA leave to cover the absence, Casteel testified:

On the time-off request, the last section on the time-off request form, there's a block or a section of inquiry under FMLA. And then when an employee requests time off or a correction slip, they check that block stating that it's FMLA.

12. Casteel testified that Davis submitted an Employee Time Correction Report requesting four hours of Holiday time to cover her absence on May 12. Casteel testified that Davis left work early on May 12 and requested holiday time to cover her absence. Davis worked four hours and and requested four hours holiday time to cover the remainder of her shift. Casteel testified that Davis made this request on May 15 and he approved it on May 18. Casteel testified that Davis did not indicate an intention to use FMLA time to cover her absence. Casteel testified that he believed Davis had enough holiday time to cover her absence but later received a memo from the timekeeping department indicating she did not have four hours of holiday time to cover the absence. The evidence indicated Davis was short 30 minutes of holiday time to cover the absence.

13. As to the June 29 absence, Casteel indicated that Davis came into work but then left for the remainder of the day. On her time-off request form, Davis requested the use of vacation time to

FILED DATE: 7/25/2018 3:42 PM  2018CH07730

2018CH7730, Dyamond Davis, 000531
Davis v. IDHS (18-2246) Document No.:    000538

cover her absence. Davis did not indicate on the form an intention to use FMLA time to cover her absence. Casteel testified that he later learned that Davis did not have enough vacation time to cover her absence. The evidence indicated that Davis need five hours and 30 minutes of vacation time to cover her absence but she only had four hours and 20 minutes.

14. As to why he could approve an employee's time off request only to later find that the request was disapproved by timekeeping, Casteel testified, "It's – I sign it, the – we trust the employees, that when they submit – surrender or submit these forms, that they know – they are well aware of their time they have available to use. And then I submit – I sign the time sheet, the time-off request, the correction slip. And, once again, I submit it to the timekeeping department."

15. On cross examination, Casteel indicated that the "Personnel Department" handles FMLA requests. As to his involvement with an FMLA request, Casteel testified, "Well, I receive a – the form from the Personnel Department stating FMLA if a person is available – is qualified. On the form it states that what they're qualified for, whether they can be mandated for overtime or if any overtime shifts would go or count against their FMLA. If they have time off and they correct – when they submit their time-off request, they need to indicate whether or not they're using FMLA."

16. On cross examination, Casteel acknowledged that he sent an email on May 5 to Rhonda Petty, Amy Hardesty and Kimberly Delattre regarding Davis' absenteeism. Casteel explained that if an employee misses three consecutive days of work he will notify the Personnel Department and the department will send an information packet to the employee regarding FMLA. Casteel testified that there was not a written rule that he notify the Personnel Department about an employee missing three consecutive days.

17. On cross examination, Casteel testified that he learned that Davis' application for FMLA was approved sometime in June 2017 due to her pregnancy. The FMLA Designation Notice

5

(Notice) form regarding Davis' FMLA approval stated, "You have been approved for FMLA protections effective 5/4/17 through 12/31/17 or when a total of 12 weeks of FMLA concurrent coverage has been exhausted, whichever comes first."

18. The Notice indicated that Davis could use FMLA to cover an absence one time per month for a two hour period "per event."

19. On cross examination, Casteel acknowledged that Davis provided a doctor's note stating she was pregnant and had seen the doctor on May 11. Casteel acknowledged that Davis requested time off on May 12, 2017 because she was not feeling well.

20. On cross examination, Casteel indicated that Davis was on proof status in May 2017 requiring Davis to provide documentation as to why she was unable to work. Proof status can be imposed by a supervisor after an employee engages in excessive absenteeism.

21. On cross examination, Casteel acknowledged that an employee must use their benefit time concurrently with FMLA time. In other words, if an employee approved for FMLA wants to use FMLA to cover an absence, the employee must exhaust all of their benefit time before using FMLA time to cover the absence. However, the employee can also designate the absence as FMLA but use their benefit time to cover the absence.

22. On cross examination, Casteel acknowledged that he took it upon himself to change Davis's time off request for an absence on June 13 from FMLA time to vacation time because Davis still had vacation time available. In explaining his decision to change Davis' time off request, Casteel testified, "All right? And so that would be – once again, we go back to concurrently. She would – she had vacation time available to use. If she would – if this had gone through as [FMLA], she would not receive any pay at all. So by consequent – by changing it to vacation time, she did get paid for that time off."

6

23. On cross examination, Casteel acknowledged that after her June 13 absence Davis' next absence was on June 29. As to his interaction with Davis regarding her June 29 time off request, the following exchange occurred:

Q: Okay. The next time Ms. Davis was off and requested time off was June 29, 2017, right?

A: That's correct.

Q: And she called you before her shift started to advise you that she had a doctor's appointment in the afternoon, is that right?

A: That's correct.

Q: And she asked you whether or not she should use FMLA time for that doctor's appointment, is that right?

A: She wanted to know what type of time. I don't recall her asking about FMLA, but I recall her asking about what time she had available to use.

Q: And you told her you would check with timekeeping?

A: That's correct.

Q: And then you –

A: I –

Q: You called her back and told her that she had vacation time and some other time?

A: I believe so, yes.

Q: Okay. But you didn't let her use FMLA time for that?

A: I don't re – I don't recall. I mean, I know I – I know I had the conversation with her. I admit to that. And I know I told her – I told her I would check the timekeeping, because she did call me in advance. I did call her back and tell

7

her that the best I could tell, she had – she had vacation time available. And then she did come to work for a period of time that day and then leave.

24. On re-direct examination, Casteel explained that he supervised some employees who were approved for FMLA but they might not use FMLA to cover an absence. Rather, they would use a personal day or a vacation day. Casteel explained that the employee is required to make this designation on the time off request form.

25. On re-direct examination, Casteel explained that he changed Davis' request to use FMLA time to vacation time for her June 13 absence because she was required to use benefit time prior to using FMLA time. It should be noted that Casteel changed the request to vacation time but the request was still designated as use of FMLA time.

26. On examination by the Administrative Law Judge (ALJ), Casteel acknowledged that Davis' unauthorized absence as listed in Charge 2 should state one hour and 10 minutes, not five hours and 30 minutes.

27. On examination by the ALJ, Casteel testified that Shapiro employees must know precisely how much vacation time and FMLA time they need to cover an absence.

28. On examination by the ALJ, Casteel indicated that it is not an "exact science" as to how much benefit time an employee might have according to timekeeping. Casteel explained:

On a monthly basis, we receive – approximately about the 15th of the month, we receive a time statement for the previous month which shows what kind of time is available as of the end of the previous month. And then the employee is given a copy of the time statement. They're given a copy of what's called the MAR, which is the monthly attendance report. And it shows for a month at a time all the entries made for their time. It shows whether they worked the evening shift. It shows if they used vacation time, holiday time, personal time, sick time. Those are all entered

2018CH7730, Dyamond Davis, 000535
Davis v. IDHS (18-2246) Document No.:    000542

on that sheet. The person receives that. They review that themselves. They sign off on it. I sign off on it. My assistant signs off on it, so we have three different signatures on that that show that the employee accepted the time statement. If they have an issue with it, they bring it up to us at that time. We follow up with timekeeping to try and make a determination what should be the correct time.

29. On examination by the ALJ, Casteel reiterated that employees receive a MAR "approximately" on the 15th of every month.

30. On examination by the ALJ regarding when employees receive benefit time they have earned, Casteel testified that employees get vacation time on the 16th of every month and sick time on the 1st of the month.

31. On re-direct examination, Casteel testified that employees must keep a running tally of how much benefit time they have available because timekeeping might not be as current as to how much time was available, i.e., the employee might subsequently use benefit time that has yet to be recorded at timekeeping.

**Rhonda Petty**

32. Rhonda Petty (Petty) testified she is the Human Resource Coordinator at Shapiro. Petty acted as the FMLA coordinator at Shapiro. Based upon the documentation provided by Davis' physician, Petty described Davis' approved FMLA request as follows:

She is approved effective May 4, 2017 through December 31st of 2017. She is approved for appointments one time per month for 2 hours. She is approved for a single continuous leave period after the birth of the baby effective 12/19 of 2017 to – January 30, 2018, for 248 hours. She is not approved for a recovery period after her appointment. She is not approved for overtime restrictions, and she is not approved for flare-ups.

2018CH7730, Dyamond Davis, 000536
Davis v. IDHS (18-2246) Document No.:    000543

33. Petty testified that the FMLA packet provided to the employee explained that the employee must state "FMLA" with a call off and that employees must use accrued paid benefit time before using FMLA. Petty testified that a document signed by Davis called "FMLA REMINDERS" stated, "**Employees must be knowledgeable of their benefit time** and submit a 'Staff Request for Time off' (IL-444-4140) indicating FMLA in the appropriate box and a 'Employee Time Correction Report' (IL-444-4090) requesting all appropriate paid benefit time OR LF-FMLA dock time to cover the absence."

34. Petty testified that Davis did not designate on her time off request the use of FMLA time to cover her absences on May 12 and June 29.

35. Petty testified that Davis could not use five hours of FMLA time to cover her absence on May 12 because she was only approved to use two hours of FMLA for a doctor's appointment.

36. On cross examination, Petty indicated that an employee could use paid benefit time as FMLA time to cover an absence. In other words, an employee could call in an absence under FMLA but still use accumulated benefit time to cover the absence.

37. On cross examination, Petty testified that she did not personally instruct Davis on how to complete a request for time off using FMLA.

38. On cross examination, Petty testified that Davis' application for FMLA was approved on June 1 to cover a period starting on May 4. As to what would prevent Davis from using FMLA time for an absence after May 4, Petty testified, "If she called off and did not state FMLA for her call-off or if she submitted a staff time-off slip and did not check the FMLA box on the far right of the form."

39. On cross examination regarding Davis' responsibilities requesting FMLA to cover an absence, the following exchange occurred:

2018CH7730, Dyamond Davis, 000537
Davis v. IDHS (18-2246) Document No.:    000544

Q: Now, if you look at that reminder, this is Davis Exhibit 000205. And you look at 1, it states that the employee could either request FMLA or state – or the condition be covered under FMLA when calling. Is that right? Am I reading that right?

A: Employee must state FMLA or the condition covered by FMLA when calling off due to an FMLA-protected condition, yes.

Q: So – so by virtue of Ms. Davis calling off because of her pregnancy and she was sick, that would trigger FMLA?

A: If she mentioned her condition or FMLA or checked the appropriate box, it would trigger it. It would trigger FMLA, yes.

40. On cross examination, Petty acknowledged that Davis' FMLA application was still pending when her absence occurred on May 12. Petty acknowledged that Davis could not have designated FMLA on her time off request for May 12 if Davis was not approved for FMLA until June 1.

41. The first sentence in the FMLA REMINDER states, "Employees must state 'FMLA' OR the condition covered by FMLA when calling off due to an FMLA protected condition." On examination by the ALJ regarding this sentence, Petty acknowledged that a statement from Davis regarding her pregnancy when she called off work would be sufficient to properly request FMLA.

42. On re-direct examination, Petty testified that Davis could not use FMLA to cover her May 12 absence because she did not have a doctor's appointment on May 12.

43. On re-cross examination, Petty maintained that Davis' FMLA application was approved for only two hours per month, as opposed to an "estimate" of two hours per month.

11

44. On re-cross examination, Petty testified that Davis could not use FMLA to cover her absence on June 29 because she already used FMLA time to cover her absence on June 13.[3]

### Gina LoGalbo

45. Gina LoGalbo (LoGalbo) testified that she is the Personnel and Labor Relations Director at Shapiro. LoGalbo acted as hearing officer in Davis' pre-disciplinary hearing and recommended her discharge. LoGalbo testified that Davis violated Shapiro Policy 6/2 regarding absenteeism and tardiness.

46. LoGalbo testified that either of Davis' unauthorized absences on May 12 and June 29 required discharge pursuant to the affirmative attendance disciplinary track. The evidence indicates Davis was on the 12th step of the disciplinary track for affirmative attendance prior to both absences. The 12th step of the disciplinary track requires discharge.

47. LoGalbo testified that Davis' absences could not be excused through FMLA because she did not tell her supervisor she was using FMLA.

48. On cross examination, LoGalbo testified that it was her understanding that Davis could have "annotated FMLA" on her time off request for her absence on May 12 while Davis' FMLA application was still pending. LoGalbo testified, "And then ultimately if it was – if her FMLA was denied, it would have just remained an unauthorized absence."

49. On examination by the ALJ, LoGalbo acknowledged that Davis' unauthorized absence on June 29 was for one hour and ten minutes and not five hours and 30 minutes as stated in Charge 2. LoGalbo indicated five hours and 30 minutes was the amount of vacation time Davis' requested but which Davis did not have.

---

[3] Even though Casteel took it upon himself to change Davis' request to paid vacation time because she was required to exhaust such time prior to using unpaid FMLA time, the evidence indicated that this request was still designated paid FMLA time to cover the absence and Davis was only allowed two hours a month for doctor's appointments.

2018CH7730, Dyamond Davis, 000539
Davis v. IDHS (18-2246) Document No.: 000546