**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| DYAMOND DAVIS on behalf of herself and all others similarly situated, | ) |
| | ) |
| | ) |
| Plaintiff, | ) Case No. 18-cv-2246 |
| | ) |
| v. | ) |
| | ) |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION[1]**

Plaintiff Davis has standing to bring this action because she has suffered a concrete injury. DHS Shapiro's FMLA policy, its misunderstanding and misapplication of the Family Medical Leave Act and its statutory scheme is the reason for Davis' termination. Although Shapiro's stated FMLA Policy reads that FMLA runs concurrently with paid leave, DHS Shapiro's actual practice is that FMLA leave is applied only after "ALL" paid leave is exhausted. This practice interfered with Davis' right to take FMLA protected leave for FMLA qualifying absences.  Moreover, but for DHS's misunderstanding and misapplication of the Family Medical Leave Act in regard to Davis' absences on May 12 and June 29, Davis would not have reached the number of

---

[1] The original scheduling order and the most recent modification entered on December 29, 2020 set a filing deadline for dispositive motions relating to Plaintiff's individual claims.  Plaintiff Burns has not brought an individual lawsuit or claims against Defendant. Therefore, Plaintiff Burns is not a correct party and should not be a part of this motion.  However, if Plaintiff is incorrect, then for the same reasons Plaintiff Davis argues Defendant's motion should be denied, Defendant's motion should be denied against Plaintiff Burns also.

unauthorized absences which led to her termination for excessive absenteeism. As a result, DHS as a matter of law is not entitled to summary judgment.

    (a)    <u>Response to Undisputed Material Facts:</u>

        (1)    <u>Undisputed Material Facts</u>

1.    DHS is an agency of the State of Illinois and employs staff members throughout the State, including at the Shapiro Developmental Center in Kankakee, Illinois.

3.    Davis was an employee of the DHS at the Shapiro Center from May 2015 until her discharge in September 2017.

4.    On May 5, 2017, Davis was provided, as part of a FMLA application packet, a copy of a document entitled "FMLA Reminders," which represents a copy of DHS's Shapiro FMLA policy.

5.    One of the reminders included in the document states:

> Employees must utilize ALL accrued paid benefit time before applying for unpaid FMLA Dock time (LF) to cover FMLA related absences. If a request for FMLA dock time is received, and paid accrued benefit time is available to cover the absence, the employee will be required to submit the appropriate forms to utilize paid benefit time. Repeated requests to utilize FMLA dock time prior to the exhaustion of paid accrued benefit time may result in disciplinary action taken with the employee for failure to follow facility policies and procedures.

9.    The approval notice provided that Davis was required to substitute or use paid leave during her FMLA leave.

10.    The approval notice states: "This means that you will have unpaid FMLA time running concurrently with any paid time off provided under the personnel rules. Any paid or unpaid leave taken for this reason will count against your FMLA entitlement."

12.     The next day on May 12, 2017, she informed DHS that she was sick and unable finish her shift because of her pregnancy, but she does not allege that she had a pregnancy-related doctor's appointment that day.

13.     Davis learned that her missed time on May 12, 2017, was treated as 3 hours and 30 minutes of holiday leave and 30 minutes as an unexcused absence.

14.     On June 29, 2017, Davis advised DHS that she had an appointment with her OBGYN and would need to leave work early.

15.     She was charged with 5 hours and 30 minutes of unexcused absence for her June 29, 2017 absence.

16.     On September 15, 2017, DHS issued a statement of charges seeking the discharge of Davis for time abuse due for 30 minutes unauthorized absence on May 12, 2017 and 5 hours and 30 minutes unauthorized absence on June 29, 2017.

17.     Davis appealed her discharge to the Illinois Civil Service Commission.

25.     LoGalbo noted that during the Civil Service Commission trial, Dave Casteel testified that on May 12, 2017, Davis left work early because she was not feeling well.

26.     It was generally Shapiro's policy that where an employee had an unauthorized absence, discipline was pursued.

27.     If someone did not have benefit time and they called off work that constitute an unauthorized or unexcused absence.

28.     Davis was charged with unauthorized absences for May 12 and June 29, 2017.

32.     The FMLA approval provided Davis would be required to substitute or use paid leave, all benefit time, during her FMLA leave.

34.     Even if Davis' absence on May 12, 2017, was for an FMLA covered condition, Davis still would have had to indicate her absence was for an FMLA related condition.

36.     If Davis went to her FMLA doctor's appointment on May 11, 2017, her absence on May 12, 2017 for not feeling well was not covered by her approved FMLA, although the doctor's appointment was covered.

39.     Shapiro ensured that each employee who was approved for FMLA received a copy of the FMLA Reminders document.

40.     The FMLA Reminders reflects Shapiro's policy that employees "must state 'FMLA' OR the condition covered by FMLA when calling off due to an FMLA protected condition."

41.     Paragraph 3 of the FLMA Reminders reflects Shapiro's policy that employees must first use sick time prior to requesting other paid benefit time, such as vacation and holiday time, to cover an absence and if an employee does not have the requested accrued benefit time to cover an absence the absence will remain an unexcused absence regardless of whether it is an FMLA related absence, and disciplinary action may be taken.

(2)     Disputed Material Facts

7.     Plaintiff Davis was approved for FMLA protection from May 4, 2017, through December 31, 2017, *or when a total of 12 weeks of FMLA concurrent coverage has been exhausted, whichever occurred first* for one doctor's appointment per month lasting two hours due to her pregnancy, and she was also approved for FMLA time for a continuance period from December 19, 2017, through January 30, 2018. (Dkt. 1-1, Pg. 1 (FMLA Designation Notice-Approval))

4

11.    Plaintiff took time off of work on May 11, 2017, for a doctor's visit with her OBGYN and provided a doctor's note that she was seen that day. (Dkt. 62, Pg.1, ¶51; Dkt. 61, Pg.6, ¶19)

30.    On June 1, 2017, Davis was approved for FMLA protection effective May 4, 2017 through December 31, 2017 and for a single continuous leave period from December 19, 2017 through January 30, 2018. (Dkt. 1-1, Pg. 1 (FMLA Designation Notice-Approval)); Dkt. 62-3, Pg. 18)

(3)    <u>Disputed Immaterial Facts</u>

18.    After a hearing before an Administrative Law Judge, the ALJ determined that DHS had proven Davis accrued an unauthorized absence on May 12, 2017.

Response: This Court is not bound by the conclusions of law of the Illinois Civil Service Commission.

19.    The ALJ determined DHS had not proven an unauthorized absence on June 29, 2017.

Response: This Court is not bound by the conclusions of law of the Illinois Civil Service Commission.

20.    In determining the appropriate level of discipline for the May 12, 2017, absence, the ALJ noted that while Davis was only 30 minutes short of holiday time needed to cover the May 12 absence, it was still an unauthorized absence and Davis did not request or have enough time to cover it.

Response: This Court is not bound by the conclusions of law of the Illinois Civil Service Commission.

21.     The ALJ considered DHS policies regarding unexcused absences, which follows a 12-step progressive discipline track, and noted that in only two years of employment, Davis was suspended 47 days for unauthorized and/or unexcused absences.

Response: This Court is not bound by the conclusions of law of the Illinois Civil Service Commission.

22.     As a result, the ALJ determined Davis had reached the final step on the disciplinary track and discharge was the appropriate discipline for Davis' May 12, 2017 absence.

Response: This Court is not bound by the conclusions of law of the Illinois Civil Service Commission.

23.     The Illinois Civil Service Commission affirmed and adopted the proposal for decision by the ALJ and discharged Davis for the May 12, 2017 absence.

Response: This Court is not bound by the conclusions of law of the Illinois Civil Service Commission.

29.     On May 12, 2017, Davis took off 3 hours and 30 minutes but only had 3 hours of holiday time so 30 minutes was an unauthorized absence. (Dkt. 61 Pg.4 ¶12).

Response: Davis requested 4 hours of holiday time; she only had approved 3 ½ hours of holiday time, so 30 minutes was designated as an unauthorized absence.

33.     Any time Davis took off prior to December 19, 2017 outside of her monthly two-hour doctor's appointment for her pregnancy would probably not be covered by FMLA. (Dkt. 62-2, Pg. 58:9-19;  Dkt. 62-2, Pg. 54:4-9).

Response: LoGalbo does not know whether it would be covered by FMLA. She testified she was not a FMLA expert, nor was she an expert when she worked at DHS Shapiro's facility.

35.    LoGalbo understands Shapiro's policy is that if when requesting time off of work an employee did not indicate it was for FMLA then it was not covered by the FMLA.

Response: LoGalbo's understanding is not DHS Shapiro's FMLA policy.  The policy states, "Employees must state "FMLA" OR the condition covered by FMLA when calling off due to an FMLA protected condition." (Dkt. 1-1 Pg.2)

38.    If Davis merely reported on May 12 that she was taking off because she did not feel well since she was pregnant and there was no doctor's appointment and she did not have time to cover it or follow the call-off policies, including indicating FMLA on her time off request, which would not be covered by her approved FMLA.

Response: This is not a fact, but a hypothetical and the hypothetical is not consistent with the facts in this case.

(4)    Undisputed Immaterial Facts

2.    Burns started working for DHS at the Shapiro center in 2003.

Response: See footnote #1.

6.    Burns also received a copy of FMLA Reminders.

Response: See footnote #1.

8.    Her doctor noted, however, that she did not need to work part-time or on a reduced schedule because of a medical condition.

Response: Davis did not seek to work part-time or on a reduce schedule because of a medical condition.

24.    Gina LoGalbo, who during Davis' termination was the Human Resources Director at Shapiro, testified Shapiro is a DHS facility that houses people with mental issues.

Response: The nature of the facility is not relevant in this case.

31.    Davis was approved for a doctor's visit one time per month for two hours.

Response: Plaintiff was approved for FMLA due to pregnancy.  The approval on her certification is not a limitation on her FMLA entitlement with respect to pregnancy.

37.   Davis' FMLA approval was for doctor's appointments and then for her pregnancy leave, but if she wanted to pursue other FMLA coverage for other conditions she could have applied for additional FMLA coverage.

Response: Davis was approved for FMLA  for pregnancy and did not need FMLA for any other condition.

42.    LoGalbo did not agree Davis lost her job simply for the May 12 and June 29 absences, noting it was a buildup of repeated conduct of not showing up for work and not calling her supervisor to report she was not coming in to work.

Response: It is undisputed because the statement reflects LoGalbo's testimony. However, it is immaterial because Davis was charged with excessive absenteeism solely on the basis of the May 12 and June 29 absences and this is what led to her termination.

(5)    Additional Material Facts

1.    Defendant's Shapiro facility made its own policies that applied to Shapiro only. Dkt. 62-2,  Pg. 41:17-42:1

2.    Shapiro implemented two written policies pertaining to leave taken under the Family Medical Leave Act.  First, its "FMLA Reminder" provides, in part:

> Employees must utilize ALL accrued paid benefit time before applying for unpaid FMLA Dock time (LF) to cover FMLA related absences."  "If the employee does not have the requested accrued benefit time to cover the absence, the absence will remain Unexcused (UA) whether or not it is an FMLA related absence, and disciplinary action may be taken." See, Dkt. 62-3, Pg. 23, ¶3,4.

Second, Shapiro Policy 6/2 provides, in part:

8

Continued application of benefit time not yet accumulated may result in the absence being recorded as unauthorized (UA) and the appropriate level of discipline (up to and including discharge from state service) will be imposed.
Dkt. 62-3, Pg.6, ¶6.

3.    DHS Shapiro required Davis to provide a medical certification for her pregnancy.

Dkt. 62-3, Pgs. 19-22

4.    DHS employees periodically earn paid time off in various categories during their

employment with the State, e.g., holiday, sick leave, vacation, personal days, etc. Dkt. 62-3, Pg.26

5.    These hours of earned paid time off are generally referred to as accrued paid benefit

time or accrued paid time off.  Dkt. 62-3, Pg. 23, ¶3,4.

6.    DHS uses the Employee Attendance Record ("EAR") and Employee Attendance

Data ("EAD") to track an employee's time off from work and the type of time taken -- whether

paid or unpaid.   Dkt. 62-3, Pgs. 27 and Dkt. 62-3, Pgs.14-17

7.    Defendant classifies time off on both the EAR and EAD using the codes on its Staff

Request for Time Off Form (IL444-4140). Dkt. 62-3, Pg.26,

8.    SI designates an employee's use of Sick Time, SF designates Sick Family, HO

designates an employee's use of Holiday time, VA designates an employee's use of Vacation time

and LF designates an employee's use of Family Medical Leave Act time.   Dkt. 62-3, Pgs.14-17

9.    On or about April 29, 2017, Davis became ill, left work, went to Immediate Care,

and learned she was pregnant. Dkt. 62, Pg.1 ¶53

10.    Davis missed work on May 1, 2, 5 and 6 due to her pregnancy. Dkt. 62, Pg.1 ¶53

11.    Davis' pregnancy made her ill and she missed work on May 11, 2017.  She returned

to work on May 12, 2017 and brought a doctor's note. Dkt. 62-3, Pg. 13

12.    As Davis' illness continued, she left work early on May 12. Dkt. 61, Pg.4 ¶12 and

Dkt. 62, Pg. 1¶51

13.    Davis told Rebecca Irby she felt sick because of her pregnancy and she wanted to use FMLA. Dkt. 62-2 Pg.995-24, 100:1-7

 p.2 ¶ 51

14.    Ms. Irby was a proper and appropriate person for Ms. Davis to notify when she left early on May 12. Dkt. 61, Pg.3-4, ¶9

15.    At the time Davis missed work on May 12, her FMLA was still pending with Defendant. Dkt. 61, Pg.5, ¶17

16.    Davis could not have designated FMLA on her time off request for May 12 if Davis was not approved for FMLA until June 1. Dkt. 61, Pg. 11, ¶40.

17.    DHS did not instruct Davis how to use, apply or designate FMLA. Dkt. 62 Pg. 13 ¶ 54

18.    Davis believed she could only use FMLA for doctor's appointments and leave time for after the baby was born. Dkt. 62, Pg.1 and 2 ¶54

19.    Davis missed four hours of work on May 12.  In compliance with Shapiro's policy that paid benefit time must be exhausted before FMLA time could be used, Davis designated the 4 hours as holiday time to cover her absence. However, Davis only had 3 hours and 30 minutes of accrued holiday time. This left her 30 minutes short of the designated time to cover the entire absence. Dkt. 61, Pg.4, ¶12.

20.    Per Shapiro's policy, because holiday time was insufficient to cover the entire 4 hours Davis was absent from work, 30 minutes of time was charged as an unauthorized absence ("UA"). Dkt. 62-3, Pg.1

21.    None of the time Davis was absent on May 12 was designated as FMLA.  Dkt. 47 Pg.13 ¶54

22.    On June 13, Davis had a doctor's appointment and marked FMLA on her time off request form.  Her supervisor changed the time off form to vacation instead of FMLA because Davis still had accrued vacation time available. Dkt. 61, Pg.8 ¶25.

23.    On June 29, 2017 Davis called her supervisor before her shift started to inform him that she had an appointment that afternoon with her OBGYN and would need to leave work early. Dkt. 61 Pg.7, ¶23.

24.    Davis missed 5 hours and 30 minutes of time from work on June 29.  Following Shapiro's policy and because her supervisor told her she had the time available, Davis attempted to use vacation time to cover all 5 hours and 30 minutes, but she only had 4 hours and 20 minutes of accrued vacation.  Dkt.62-3, Pg.29 ¶4 and Dkt. 61 Pg.7 ¶23- Pg.8

25.    Per policy, Shapiro charged the 1 hour and 10 minutes as an unauthorized absence. Dkt. 61, Pg.8, ¶26.

26.    In both cases, Shapiro did not designate the time used in excess of the accrued benefit time as FMLA leave.  In fact, Shapiro did not designate any time on May 12 or June 29 as FMLA. Dkt. 47, Pg.13, ¶54, Pg.17 ¶72; Dkt. 61, Pg.12 ¶44

27.    Nor did Shapiro designate Davis June 13 absence as FMLA. Dkt. 62-3 Pgs.25-27 and Dkt. 47 Pg.15 ¶64

28.    DHS does not track FMLA time taken. Dkt. 62-3 Pgs.27-28, Pgs.33-46

29.    DHS charged Davis for Abuse of Time for the 30 minutes on May 12, and the entire 5 hours and 30 minutes on June 29, and terminated her employment. Dkt. 62-3, Pg. 1 and Dkt. 61 Pg.2 ¶3

30.     Defendant did not allow Davis to use FMLA to cover her May 12 absence because she did not have a doctor's appointment on May 12, her condition notwithstanding. Dkt. 61, Pg.11 ¶42.

31.     In addition, Davis was not allowed to use FMLA time to cover her absence on May 12 because she was only approved to use 2 hours of FMLA time for a doctor's appointment. (Dkt. 61, Pg.10, ¶35)

32.     DHS did not allow Davis to use FMLA to cover her doctor's appointment on June 29 because Davis had a doctor's appointment on June 13. Dkt. 61, Pg.12 ¶44)

33.     DHS considered that Davis' FMLA approval was limited of 2 hours per month, as opposed to an "estimate" of two hours per month. Dkt. 61, Pg.11 ¶43.

34.     LoGalbo testified that Ms. Davis' absence on May 12 for her pregnancy related illness was not covered by her FMLA approval. Dkt. 62-2, Pg. 60:3-24 and Pg. 61:1-10, Pg. 62:22-24, Pg. 63:1-5.

35.     LoGalbo further testified that if Ms. Davis woke up in the morning and felt ill and missed work, because it was not a doctor's appointment, her absence would not be covered by FMLA based on Davis' approval notice. (Dkt. 62-2, Pg. 72:16-24, Pg. 73:1-4)

36.     Davis could not use FMLA for flare-ups, a recovery period after a doctor's appointment or anything like that or anything beyond her once a month two-hours doctor's appointment. (Dkt. 62-2, Pg.73:6-21.

37.     DHS' Shapiro facility required everyone to get a medical certification, including pregnant employees and it has to be filled out by a physician. Dkt. 62-2, Pg. 106:17-24, Pg. 107:1-3.

38.     Employee 157 request FMLA leave on several occasions: e.g., 10/7/16, 5/31/16, 7/15/16. Dkt. 62-3, Pg. 33, 34, 36.

39.     On each occasion Employee 157 designated SF (sick family) as the paid benefit time to be used for the absence. Dkt. 62-3, Pg. 33, 34, 36.

40.     On its Employees Attendance Record (EAR) and its Employees Attendance Data (EAD) DHS reflected that all the time taken was solely SF, and none of time was reflected as LF (DHS' code for FMLA time). Dkt. 62-3, Pg. 40, 42, 46

41.     Davis was approved for FMLA because she was pregnant. Dkt. 1-1, Pg. 1

## ARGUMENT

Davis has standing to bring this action[2] because she is attempting to vindicate her individual, private statutory rights under the Family and Medical Leave Act of 1993. Defendant's violation of Davis' rights under the FMLA as a matter of law establishes standing for her to sue. Further, Davis has suffered an injury that was caused by DHS when it denied her FMLA leave on May 12 and June 29 for absences protected under the FMLA, brought charges against her for being absent both days, and ultimately terminated her for excessive absenteeism. She has standing to bring this action.

A. DHS's Certification and Notice of FMLA Designation Is Erroneous, Misleading and It Violates the FMLA

Subject to Section 2613 of the FMLA, eligible employees are entitled to 12 weeks of unpaid leave for 1 or more of the following 5 reasons:

---

[2] Davis amended her complaint to bring this cause as a class. Her motion for class certification is pending as Dkt.46 . In Defendant's Response in Opposition to Plaintiff's Motion for Class Certification, it asserts lack of standing.  Plaintiff Davis incorporates as additional arguments for standing the arguments made in Plaintiffs Reply to Defendant's Response In Opposition to Plaintiff's Motion for Class Certification. Dkt.63 Pgs. 1-2

(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

(B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C)  In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

(E) Because of any qualifying exigency (as the Secretary shall, by regulation, determine) arising out of the fact that the spouse, or a son, daughter, or parent of the employee is on covered active duty (or has been notified of an impending call or order to covered active duty) in the Armed Forces.  *29 U.S.C. § 2612(a)(1)*

An employer can only require medical certification for FMLA leave when the request involves subsections C and D of Section 2612 (a) - the employees own serious health condition or the serious health condition of the spouse, child or parent of the employee. *29 U.S.C. § 2613 (a)*  DHS Shapiro required Davis to certify for FMLA.  This is the first of many errors and misapplications of the law.

Davis requested and was approved for FMLA underneath section (A) of 29 U.S.C §2612(a)(1) i.e., pregnancy. *Plf. UMF ¶41* DHS sent Davis the medical certification form entitled Employees Own Serious Health Condition. *Dkt. 62-3 Pgs.18-22*  To compound its error and misapplication of the law, DHS' FMLA Designation Notice in conjunction with the medical certification misled Davis into believing she only could use FMLA for a single doctor's visit per month and for after her baby's birth. *Plf. UMF ¶18*

The FMLA statutory scheme mandates that leave for pregnancy or continuing treatment for pregnancy be allowed as follows:

29 C.F.R. §825.120   Leave for pregnancy or birth.

(a) General rules. Eligible employees are entitled to FMLA leave for pregnancy or birth of a child as follows:

> (4) The expectant mother is entitled to FMLA leave for incapacity due to pregnancy, for prenatal care, or for her own serious health condition following the birth of the child. Circumstances may require that FMLA leave begin before the actual date of birth of a child. *An expectant mother may take FMLA leave before the birth of the child for prenatal care or if her condition makes her unable to work. The expectant mother is entitled to leave for incapacity due to pregnancy even though she does not receive treatment from a health care provider during the absence, and even if the absence does not last for more than three consecutive calendar days. For example, a pregnant employee may be unable to report to work because of severe morning sickness*. (Emphasis added)

29 C.F.R. §825.115   Continuing treatment.

A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

> (b) Pregnancy or prenatal care. Any period of incapacity due to pregnancy, or for prenatal care. (See also 29 C.F.R. §825.120)

> (f) Absences attributable to incapacity under paragraph (b) or (c) of this section qualify for FMLA leave even though the employee or the covered family member does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three consecutive, full calendar days. For example, an employee with asthma may be unable to report for work due to the onset of an asthma attack or because the employee's health care provider has advised the employee to stay home when the pollen count exceeds a certain level. An employee who is pregnant may be unable to report to work because of severe morning sickness.

DHS denied Davis FMLA leave for the May 12 and June 29 absences because she was only approved for one appointment per month for 2 hours. *Plf. UMF ¶21 and ¶36* Davis' May 12 absence, admittedly, was not for a doctor's appointment. *Plf. UMF ¶12 and Plf. UMF ¶30* The time Davis missed on June 29 was for a doctor's appointment; yet, she was still denied the use of

FMLA. *Plf. UMF ¶¶23 and 26* The reason for the denial was because DHS misunderstood FMLA and as a consequence, Davis' rights were violated. Davis was entitled to take FMLA leave for any pregnancy related illness whether or not the leave was consistent with her certification. The FMLA allows pregnant employees to take leave intermittently based on their condition. (See also, 29 C.F.R. §825.120 and §825.115) For example, a pregnant employee is allowed to take FMLA for morning sickness even though she does not receive treatment from a doctor. Davis had been sick because of her pregnancy on May 11 and sought medical treatment. *Plf. UMF ¶11* She came to work on May 12, but left early because she continued to feel ill due to her pregnancy. *Def. UMF ¶¶12 and 25, Plf. UMF ¶¶11-13* Before leaving work Davis informed the assistant dietary manager that she was sick because of her pregnancy and she wanted to use FMLA. *Plf. UMF ¶13* DHS denied her request on the mistaken belief that FMLA did not cover absences for illnesses due to pregnancy.

Also, Davis was entitled to take FMLA leave for the entire 5 hours and 30 minutes she needed for her OBGYN appointment on June 29. Even if Davis was approved for FMLA for her June 13 doctor's appointment, she also was entitled to FMLA for the June 29 appointment. Assuming *arguendo* Davis was approved and was given FMLA leave on June 13 and Davis needed and sought leave for a doctor's appointment beyond what was provided in her certification, DHS was not entitled to deny her FMLA leave for the June 29 appointment according to the 7th Circuit. Entitlement to intermittent FLMA leave is not limited to the precise frequency and duration stated in the certification. *Hansen v. Fincantieri Marine Group, LLC*, 763 F.3d 832 (7th Cir. 2014). In *Hansen*, the employer argued that Hansen was not entitled to FMLA leave for certain absences because he significantly exceeded the estimated frequency in his medical certification that established his entitlement to FMLA. In deciding "whether an employer is allowed to deny

intermittent FMLA leave when an eligible employee exceeds the estimated length or duration provided in his medical certification form" the Seventh Circuit held that the estimated frequency and duration of intermittent leave do not act as absolute limits on the employee's entitlement to leave. In deciding that the employer violated the FMLA, the court stated that the employer should have sought recertification as the regulations (29 C.F.R. §825.308(c)(2)) contemplate rather than simply denying the leave. This case is even more compelling than in *Hansen v. Fincantieri Marine Group, LLC*, because the certification is unnecessary. Davis was approved for FMLA due to pregnancy. *Plf. UMF ¶41* The FMLA allows pregnant women to take intermittent leave for periods of incapacity and for pre-natal care. Here, Defendant denied Davis FMLA leave for June 29. *Plf. UMF ¶26* Davis complied with DHS' policy and informed her employer prior to her shift starting that she had an OBGYN appointment. *Def. UMF* 14, *Plf. UMF ¶23* DHS denied Davis the right to take FMLA for this appointment because the appointment exceeded what was provided in her certification and because it did not understand the FMLA. *Plf. UMF ¶32*

This court should not accept any reasons DHS asserts as to why Davis was not approved and given FMLA leave for her May 12 and June 29 qualifying absences. The real reason is Shapiro's FMLA Policy. Davis and employee 157 were not approved or given FMLA for FMLA qualifying absences because both had paid leave available and DHS runs FMLA consecutive to its paid leaves.

B. DHS Shapiro's FMLA Policy Violates The FMLA By Interfering With Davis' Right To Request And Take FMLA Protections For FMLA Qualifying Absences.

The Shapiro FMLA Policy on its face violates the FMLA. The Shapiro FMLA policy requires the use of ALL (emphasis in the original language of the policy) accrued paid benefit time before FMLA time can be used. *Def. UMF ¶5, Plf. UMF ¶2* This is a restraint, denial and

interference of Davis' use of FMLA. Davis was never able to use FMLA because she had not exhausted all paid leaves.  This was the situation concerning the June 29 qualifying absence. Davis' request for leave on June 29 was within DHS' understanding of  the FMLA and the approval designation it provided to Davis. *Dkt. 1-1 Pg.1*  Davis asked to take FMLA for a doctor's visit. *Def. UMF ¶14, Plf. UMF ¶23* DHS provided multiple conflicting and contradictory testimony for the reason Davis was not given FMLA leave for the time missed on June 29.  DHS said, "Davis did not request to use FMLA *Dkt. 61 Pg.7 ¶23* , Davis did not have FMLA available for the doctor's visit because she was given FMLA leave time for the doctor's visit on June 13. Finally, DHS admitted Davis was not approved for any FMLA leave on June 13 *Plf. UMF ¶22, 26 and 27* and no FMLA was approved for Davis on June 29. *Plf. UMF ¶26 and 27* None of the records DHS produced reflect that Davis was given FMLA time for any qualifying absence. *Plf. UMF ¶21* The EAR and EAD reflect only the paid leaves Davis requested. *Dkt. 62-3, Pgs. 27 and Dkt. 62-3, Pgs.14-17*

Employee 157 is an even better example of how DHS Shapiro applies its FMLA policy because this person has multiple requests for FMLA leave:

> Ex.1 Employee 157 requests  LF or FMLA leave for an absence on October 7, 2016 along with paid benefit time of SF or Sick Family leave for 4 hours. *Dkt. 62-3 Pgs.33*  Employee 157 is approved and given only 4 hours of SF leave. *Dkt. 62-3 Pg.46*

> Ex.2 Employee 157 requests  LF leave for an absence on July 15, 2016 along with paid benefit time of 8 hours of SF. *Dkt. 62-3 Pgs.36*  Employee 157 is approved and given only 8 hours of SF Dkt. 62-3 Pg.42

There are no records reflecting Davis or Employee 157 were approved and were given FMLA leave for any FMLA qualifying absence.  FMLA requires covered employers to make, keep and preserve records pertaining to compliance with FMLA. 29 U.S.C. 2616(b) DHS produced no records showing employees took FMLA.  This is not a surprise because rarely would an employee

exhaust their paid leave allotment. DHS offers an overabundance of paid leave options that prevents employees from exercising the protections the FMLA affords. The evidence is undisputable that DHS runs FMLA consecutive to it paid leaves.

DHS relies solely on the language in its notice that it runs FMLA concurrently to its paid leave. *Def. UMF ¶10* This Court must reject this attempt to rely on the wording of the approval notice, to give the appearance of compliance with the recordkeeping requirements of the FMLA.

Shapiro's policy and practice of mischaracterizing FMLA leave and designating it as paid benefit time constitutes interference and violates FMLA as a matter of law. The 9th Circuit address this issue. In *Xin Liu v. Amway* Corp., 347 F.3d 1125 (9th Cir. 2003), the employer "misidentified" the employee's FMLA qualifying leave as "personal leave." The employer argued that the employee was not ultimately denied rights under the FMLA because there was no practical distinction between the personal leave she was granted and the FMLA leave to which she was entitled. *Id. at 1135* The court soundly rejected this argument. The court held that under DOL regulations, "the mischaracterization" of plaintiff's leave as personal leave qualifies as "interference" with plaintiff's leave. "A violation of the FMLA simply requires that the employer deny the employee's entitlement to leave." Id. The court found that the employer failed in its responsibility to assess the employee's entitlement to FMLA leave and therefore denied the employee a substantive right under FMLA.

Similarly in this case, DHS Shapiro mischaracterizes FMLA qualifying leave as paid benefit leave. As a result, it punishes employees for taking FMLA by charging them with unauthorized absences based on the amount of accrued benefit time the employee has available to use. If Shapiro's policy was to properly designate all FMLA leave as FMLA, then it would not

have the discretion to charge any of the leave as an unauthorized absence. Shapiro's policy and practice denies Davis a substantive right under FMLA and thus constitutes a violation of FMLA.

The unexcused absences on May 12 and June 29 lead to the charges for excessive absenteeism and ultimately Davis discharge. 13 *Plf. UMF ¶29*  The missed time not covered by the paid leave Davis selected should have been covered by FMLA because they both were absence related to her pregnancy.  Because the dates were the sole reason why Davis exceeded the unauthorized absence guidelines for termination, when they absences are properly given the FMLA protection warranted by law and the UA are removed, Davis would not have been terminated. Because DHS is unable to show that it is entitled to a judgement as a matter of law, its motion for summary judgment must be denied.

Wherefore, Davis requests this Honorable Court deny Defendant's Motion For Summary Judgment.

**Dated: February 4, 2022**                   Respectfully Submitted,
                                              ATTORNEY FOR PLAINTIFFS

                                              s/Tammy J. Lenzy
                                              One of Plaintiffs' Attorneys

                                              Tammy J. Lenzy
                                              Legal Counsel PC
                                              936 W. Madison, #3C
                                              Chicago, IL 60607
                                              (312) 624-9973
                                              tjlenzy@legalcounselpc.net


                                              s/Danny Windham
                                              One of Plaintiffs' Attorneys
                                              Danny Windham
                                              53 W. Jackson Blvd., Suite 309
                                              Chicago, IL 60604
                                              (312)641-1900
                                              dwindham@childerslaw.org

## CERTIFICATE OF COMPLIANCE WITH CDIL-LR 7.1(D)(5)

Pursuant to CDIL-LR 7.1(D)(5) (incorporating the page and character limit set forth in CDIL-LR7.1(B)(4)), the undersigned hereby certifies the Argument section of this memorandum does not contain more than 7000 words or 45,000 characters. In making this certification, I relied upon the word count function of Microsoft Word that indicated the Argument section contains 2428 words and 14,386 characters with spaces.

Respectfully Submitted,

/s Tammy J. Lenzy
One of Plaintiff's Attorneys

Tammy J. Lenzy
Legal Counsel PC
936 W. Madison, #3C
Chicago, IL 60607
(312) 624-9973
tjlenzy@legalcounselpc.net

## CERTIFICATE OF SERVICE

I, the undersign, certify that on February 4, 2022, served Plaintiff's Response to Defendant's Motion for Summary Judgment by the court's electronic case filing system which sent notice to defendant's counsels, Lisa Cook, Assistant Attorney General at lisa.cook@ilag.gov and Thomas R. Ewick, Assistant Attorney General at Thomas.Ewick@ilag.gov.

/s Tammy J. Lenzy