E-FILED
Tuesday, 31 May, 2022  09:40:24 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

---

| | |
|---|---|
| **DYAMOND DAVIS and ANTIONETTE BURNS,** ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No.  18-CV-2246** |
| ) | |
| **ILLINOIS DEPARTMENT OF HUMAN SERVICES,** ) | |
| **Defendant.** ) | |

---

### <u>ORDER</u>

---

In the operative Fourth Amended Complaint (#44-1), Plaintiffs, Dyamond Davis and Antionette Burns, each allege that Defendant, the Illinois Department of Human Resources, engaged in willful interference with their rights under the Family and Medical Leave Act ("FMLA"). See 29 U.S.C. § 2601 et seq. Presently before the court is a Motion for Summary Judgment (#58) filed by Defendant, accompanied by a Memorandum in Support of the Motion (#59). Plaintiffs filed a Response (#65) to that motion on February 4, 2022, and Defendant has not filed a reply. For the reasons set forth below, Defendant's Motion for Summary Judgment (#58) is GRANTED.

### BACKGROUND

The following background facts are taken from Defendant's Undisputed Statement of Material Facts, the Additional Facts section in Plaintiffs' Response, and the exhibits attached by Defendant to its Motion.

The Shapiro Developmental Center ("Shapiro") is an assisted living facility operated by Defendant. Located in Kankakee, Illinois, Shapiro employs more than 1,000 people.

Shapiro offers its employees multiple categories of paid leave time, including holiday time, vacation time, sick time, and personal time. Regarding requests for time off, the Shapiro employee handbook states:

> It is the employee's responsibility to be knowledgeable of the amount and type of accumulated time he/she has prior to making a request for time off. Continued application of benefit time not yet accumulated may result in the absence being record as unauthorized (UA) and the appropriate level of discipline (up to and including discharge) will be imposed.

Shapiro's policy on absenteeism distinguishes between unauthorized absences (UA) and unexcused, unreported absences (XA). The employee handbook details a 12-stage progressive disciplinary plan pertaining to the accumulation of unauthorized absences. The administrative action prescribed for a 12th offense is discharge. The handbook establishes that an unexcused, unreported absence (XA) "shall be considered as two offenses" for the purposes of the 12-stage plan.

*Plaintiff Dyamond Davis*

Davis began her employment at Shapiro in May of 2015. On April 29, 2017, Davis learned that she was pregnant. On May 5, 2017, Shapiro officials provided her with an "FMLA application packet." Included in that packet was a document labeled "FMLA Reminders."

The FMLA Reminders page stated: "Employees must utilize ALL accrued paid benefit time before applying for unpaid FMLA Dock time (LF) to cover FMLA related absences." (Emphasis in original.) Further, the Reminders page stated: "If the employee does not have the requested accrued benefit time to cover the absence, the absence will remain Unexcused [*sic*] (UA) whether or not it is an FMLA related absence and disciplinary action may be taken." Similarly, "[r]epeated requests to use FMLA dock time prior to the exhaustion of paid accrued benefit time" could also result in disciplinary action. Finally, the Reminders page stated: "**Employees must be knowledgeable of their benefit time**[.]" (Emphases in original.)

Davis was also provided with a form labeled "Employee's Own Serious Health Condition." The form noted that "[t]he state of Illinois requires that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition." Davis filled out her portion of the form on May 20, 2017.

Section III of the same form was filled out and signed by Dr. Kathleen Mahoney, Davis' doctor, on May 31, 2017. One item in that section asked: "Is the medical condition pregnancy?" Dr. Mahoney checked the box corresponding to "Yes." Dr. Mahoney estimated that Davis would require monthly appointments with two hours of leave needed for each appointment. Another item in the doctor's portion of the form asked: "Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions?" Dr. Mahoney marked the box corresponding to "No."

3

On June 1, 2017, Davis was approved for FMLA protection from May 4, 2017, through December 31, 2017. With respect to that time period, the approval notice indicated an "estimated frequency and duration of intermittent absences" of once per month, for up to two hours, for appointments. In the same section, no allowance was given for "Possible Flare-ups." The approval notice also indicated that Davis was approved for a continuous period of leave from December 19, 2017, through January 30, 2018.

The notice again reminded Davis that she was required "to substitute or use" all paid leave time during her FMLA leave. The notice continued: "This means you will have unpaid FMLA time running concurrently with any paid time off provided under the personnel rules. Any paid or unpaid leave taken for this reason will count against your FMLA entitlement." To that end, the approval notice stated that Davis would be required to indicate that an absence was due to "an approved, qualifying health condition," regardless of whether paid leave time was used to cover the absence.

On May 12, 2017, Davis informed her supervisor, Rebecca Irby, that she felt ill from her pregnancy. Davis was unable to finish her shift and missed four hours of work. Davis did not visit her doctor in relation to the May 12 illness. On May 15, 2017, Davis submitted an Employee Time Correction Report in which she requested four hours of holiday time to cover her May 12 absence. She made no indication on that form that she intended to use FMLA dock time to cover any or all of the absence, or even that the absence was "FMLA related."

4

A computer printout dated June 9, 2017, and labeled "Employee's Monthly Totals for May," showed Davis with a 30-minute shortfall in holiday time. As a result, Davis was charged with a 30-minute unauthorized absence. The same report showed that Davis ended the month with more than 16 hours of vacation time, 65 minutes of sick time, and 5 hours, 45 minutes of personal time.

On September 15, 2017, Defendant moved to discharge Davis from her employment based upon her unauthorized absence on May 12. The statement of charges detailed Davis' disciplinary history, which included five instances of unexcused, unreported absences (XA), and one unauthorized absence (UA), leaving Davis on the 11th stage of the 12-stage disciplinary track prior to May 12. Davis was ultimately discharged from her employment.

Davis appealed her discharge to the Illinois Civil Service Commission. In a written decision, the ALJ noted that it was Shapiro policy that employees were required to know and request an accurate amount of time off, opining that that was "not an unreasonable rule." The ALJ concluded that the absence on May 12 was unauthorized and that the 30 minutes of unauthorized absence on May 12 was sufficient grounds to support Davis' termination, as it was her 12th infraction.[1] The Civil Service Commission adopted the proposal for decision on May 18, 2018.

---

[1] Davis' termination was also originally based upon an unauthorized absence charged on June 29, 2017. The ALJ, however, rejected the position that that absence could be deemed unauthorized. Thus, Davis was effectively only discharged for the unauthorized absence on May 12. Defendant concedes as much in its brief. The result is that Davis, in order to demonstrate that her discharge was the product of FMLA interference, need only show interference with respect to May 12.

*Plaintiff Antionette Burns*

No actual evidence has been brought forth relating to Burns' claims. The operative Complaint alleges that Burns began her employment with Shapiro in 2003. It further alleges that Burns sought and was approved for three separate FMLA leave periods in 2016, 2017, and 2019.  Plaintiffs allege that during each such period, Burns' requests for FMLA dock time for FMLA related absences were denied, with Burns charged with either paid leave time or unauthorized absences for those days.

*Procedural History*

Davis filed the original Complaint (#1) in this case on September 26, 2018. In a February 4, 2020, scheduling order (#30), this court granted leave for Davis to add additional plaintiffs. On June 30, 2021, a Third Amended Complaint (#43) was filed, adding Burns as a named plaintiff. Leave was granted on August 12, 2021, for Plaintiffs to file a Fourth Amended Complaint (#44-1), which is now the operative complaint in the case. Plaintiffs alleged in that Complaint that Defendant committed multiple violations of the FMLA (29 U.S.C. § 2601 et seq.), and that those violations amounted to interference with their exercise of rights under the FMLA.

On July 30, 2021, Plaintiffs filed a Motion to Certify Class (#46). On March 30, 2022, this court denied that motion as moot but granted Plaintiffs leave to renew pending a ruling on the Motion for Summary Judgment.

Davis filed a Motion to Reconsider (#66) that Order, arguing that the Motion to Certify Class should not be denied as moot because, even if summary judgment was granted against Davis, "there still remains another Class Plaintiff, Antoinette [*sic*]

6

Burns." The court denied the Motion to Reconsider, pointing out that Defendant's
Motion for Summary Judgment was brought against both plaintiffs.

## ANALYSIS

Defendant contends first that the Plaintiffs lack standing to sue. Defendant also
argues that summary judgment is appropriate because Shapiro's policy requiring
substitution of all paid leave during an employee's FMLA leave does not amount to
FMLA interference, such that both Plaintiffs' claims must fail.

### I. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party
seeking summary judgment has the burden of demonstrating the absence of a genuine
issue of material fact. *Catrett*, 477 U.S. at 323-24. Where the moving party has met that
initial burden, the nonmoving party must respond "by identifying specific, admissible
evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs.
of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). "The mere existence of a scintilla of
evidence in support of the [nonmovant's] position will be insufficient; there must be
evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In ruling on a motion for summary judgment, this court will construe the record
in the light most favorable to the nonmovant. See *Payne v. Pauley*, 337 F.3d 767, 770 (7th
Cir. 2003). This includes "resolving all factual disputes and drawing all reasonable

inferences in favor of" the nonmoving party. See *Grant*, 870 F.3d at 568. However, the court's favor toward the nonmoving party does not extend to drawing inferences that are only supported by speculation or conjecture. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008). Likewise, the court "need not accept as true a plaintiff's characterization of the facts or a plaintiff's legal conclusion." *Nuzzi v. Nguyen*, 2009 WL 1409703, at *8 (C.D.Ill. May 20, 2009).

The party opposing summary judgment may not rely on the allegations contained in the pleadings. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). "[I]nstead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). To survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007).

## II. Plaintiff Burns

Before addressing the question of standing, it is necessary for the court to discuss the status of Plaintiff Burns in this case.

8

Defendant's Motion for Summary Judgement unequivocally requests judgment against both Davis and Burns. Subsequently, the first page of Plaintiffs' Response contains the following footnote:

> The original scheduling order and the most recent modification entered on December 29, 2020[,] set a filing deadline for dispositive motions relating to Plaintiff's individual claims. Plaintiff Burns has not brought an individual lawsuit or claims against Defendant. Therefore, Plaintiff Burns is not a correct party and should not be a part of this action. However, if Plaintiff is incorrect, then for the same reasons Plaintiff Davis argues Defendant's motion should be denied, Defendant's motion should be denied against Plaintiff Burns also.

First, though it does not appear that Plaintiffs are arguing otherwise, the court observes that Burns is properly a plaintiff in this case. Since the introduction of Burns in the Third Amended Complaint, filed on June 30, 2021, Plaintiffs' filings in this case have repeatedly referred to Davis and Burns as the named plaintiffs.[2] Furthermore, the basis of Davis' recent Motion to Reconsider was her assertion that Burns was a plaintiff, and that the matter would remain live if summary judgment was granted only against Davis. Indeed, that argument seems antithetical to the footnoted contention that Burns has not brought individual claims against Defendant. While the court observes that Burns' name has never been formally added to the court's docket, both parties have clearly been proceeding under the accurate belief that Burns *is* a plaintiff.

The footnote in Plaintiffs' Response as well as the argument in the Motion to Reconsider seem to allude to a belief that Burns is not or should not be subject to the motion for summary judgment. Though Plaintiffs fail to make their argument clear, the

---

[2] Plaintiffs' Proposed Notice of Class Action (#46-2) states quite clearly: "This lawsuit is brought by Dyamond Davis and Antionette Burns."

court discerns that the reference to the dispositive motion deadline "relating to [Davis']
individual claims" indicates that, perhaps, Plaintiffs are arguing that a summary
judgment motion against Burns is premature. On December 29, 2020, when the court set
that deadline, there was only one plaintiff. Of course, six months later, the Third
Amended Complaint added Burns as a named plaintiff.

The setting of a deadline for dispositive motions related to Davis' individual
claims cannot reasonably be construed as *precluding* dispositive motions relating to the
claims of any plaintiff that might later be added. Plaintiffs have offered no citation to
authority or argument in support of the notion that a motion for summary judgment
against Burns is premature or that Burns' claims are not properly the subject of a
motion for summary judgment. See Fed. R. Civ. Pro. 56(b) ("Unless a different time is
set by local rule or the court orders otherwise, a party may file a motion for summary
judgment at any time until 30 days after the close of all discovery."). Nor has any
argument been advanced that Defendant's Motion—filed six months after Burns was
added to the case—is prejudicial to Burns. Thus, the court finds that Burns is a proper
party to Defendant's Motion for Summary Judgment.

### III. Standing

The United States Constitution limits the jurisdiction of federal courts to actual
cases and controversies. U.S. Const. Art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S.
555, 559 (1992). "Standing to sue is a doctrine rooted in the traditional understanding of
a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff, as the
party seeking to invoke federal jurisdiction, bears the burden of demonstrating

that (1) she suffered an injury in fact, (2) the injury is traceable to the challenged conduct of the defendant, and (3) the injury is likely to be redressed by a favorable judicial decision. *Id*.

The degree of evidence required to demonstrate standing depends on the stage of the proceedings. *Lujan*, 504 U.S. at 561. In response to a summary judgment motion, the plaintiff may not rest on "'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id*. (quoting Fed. R. Civ. P. 56(e)). Because standing is not dispensed in gross, a plaintiff must demonstrate traceability as to count or claim. *Johnson v. U.S. Office of Personnel Mgmt.*, 783 F.3d 655, 661-62 (7th Cir. 2015). If a plaintiff is unable to prove standing as to any claim at the summary judgment stage, that claim must be dismissed. See *Gracia v. SigmaTron International, Inc.*, 986 F.3d 1058, 1064 (7th Cir. 2021).

*Davis' Standing*

Defendant argues that "Plaintiffs fail to meet each of the elements" of standing. Despite this assertion, Defendant makes no actual argument concerning either the first (injury in fact) or third (redressability) element with respect to Davis. While Defendant contends that "Davis was not injured by the policy at issue because . . . [her] unauthorized absence was not protected under FMLA," this is actually a traceability argument. There is no question that Davis suffered an injury: she was discharged from her employment. Moreover, there can be no disputing that a termination in violation of the FMLA is redressable in federal court.

11

Thus, the court's standing analysis may be limited to the element of traceability. The traceability or causal requirement of standing requires simply that Davis prove that her claimed injury is "the result of" or "the consequence of" the conduct that she challenges. *Johnson*, 783 F.3d at 662 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) and *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 485 (1982)). Notably, because a plaintiff need only show that her injury may be traced to a defendant's "*allegedly* unlawful conduct" (emphasis added), a standing analysis is not the occasion to determine whether or not that conduct actually is unlawful. *California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (cleaned up).

Davis has asserted four distinct violations of the FMLA that collectively amount to Defendant's allegedly unlawful conduct. Those purported violations are: (1) Defendant's policy requiring employees to exhaust all paid leave prior to taking FMLA leave; (2) Defendant's policy of "treat[ing] pregnancy like a serious health condition," such that the pregnancy must be certified by a healthcare provider; (3) Defendant's denial of FMLA coverage for pregnancy-related "flare-ups"[3]; (4) Defendant's failure to provide notice of, explain, or answer questions regarding Davis' rights and responsibilities under the FMLA.

While Davis alleges four FMLA violations, she only brings a single claim of FMLA interference. She argues that those FMLA violations collectively resulted in her being charged with an unauthorized absence on May 12.

---

[3] "Flare-up" is the term used in the medical certification form for what the Code of Federal Regulations refers to as "unforeseeable episodes of incapacity." 29 C.F.R. § 825.306.

Multiple reasons have been put forth as to why Davis was ultimately ineligible for FMLA dock time on May 12. It has been alleged that Davis never provided proper notice of her intent to invoke FMLA, she was not approved for FMLA leave based on flare-ups, and she was obligated to use her available paid leave before FMLA dock time would be granted.

The purportedly unlawful conduct alleged by Davis, however, addresses each of those concerns. If FMLA approval for morning sickness (a "flare-up") had been granted as a matter of course, the May 12 absence would have been covered by FMLA. In turn, if Davis had not been required to utilize her paid leave time first, she could have then received FMLA dock time for the May 12 absence, thus preventing her from being charged with an unauthorized absence. Further, had Davis been provided a forum for asking questions about FMLA leave, she may have learned how an employee should go about requesting FMLA dock time after-the-fact, where FMLA leave has been approved retroactively.

Accordingly, Davis' discharge can be traced to the allegedly unlawful conduct of Defendant, if in circuitous fashion. The court therefore determines that Davis has standing to pursue her claim.

*Burns' Standing*

As discussed above, the summary judgment record is completely devoid of *any* evidence relating to Burns. It is unclear the extent to which Plaintiffs' failure to offer any evidence in relation to Burns is a result of the mistaken belief that she was not properly the subject of the instant motion. It *is* clear, however, that the motion sufficiently put

13

Burns on notice. Indeed, Plaintiffs obviously addressed that fact in their Response, and even offered an argument against summary judgment against Burns—granted, the entirety of that argument was that it should be denied "for the same reasons Plaintiff Davis argues."

The court can discern no reason—and Plaintiffs have certainly offered no reason—that Burns was unable to submit at least her own affidavit attesting to some injury. See *Lujan*, 504 U.S. at 561. Due to the complete lack of evidence concerning her claim, Burns is fundamentally unable to demonstrate standing by the degree of evidence required at this stage. See *id*. Accordingly, the court finds that Burns lacks standing. Her claim against Defendant is DISMISSED.

### IV. Merits of Davis' Claim

The FMLA entitles an eligible employee to 12 workweeks of leave during any 12-month period for one or more of six enumerated reasons, including: "(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.§ 2612(a)(1)(D). Leave under subsection (a)(1)(D) may be taken intermittently where medically necessary. *Id*. § 2612(b)(1). The FMLA further provides that "[it] shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided by the FMLA. *Id*. § 2615(a)(1).

To prevail on an FMLA interference claim, an employee must establish that: (1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice

14

of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006).

There is no dispute that Davis was eligible for the FMLA's protections, based on her years and hours in service. See *id*. § 2611(2)(A). Likewise, there is no dispute that Defendant is an employer covered by the FMLA. See *id*. § 2611(4).

Defendant argues that Davis failed to provide proper notice of her intent to use FMLA dock time to cover her May 12 absence. Davis does not address this argument directly in her Response, though she does allude to her comment to Irby that she felt ill from her pregnancy. In any event, the court need not address any dispute concerning notice, because Davis has failed to demonstrate that she was entitled to FMLA leave on May 12, thus fatally undermining her claim of FMLA interference.

*Entitlement to Leave under FMLA*

At the outset, the court will provide further explanation and details of Shapiro's FMLA policy to set out precisely what Davis must show in order to prevail in her claims.

Shapiro policy refers to an absence caused by "an approved, qualifying health condition" as an "FMLA related absence." The policy requires that where an employee taking an FMLA-related absence has paid leave time available, that employee must utilize the paid leave time to cover the absence. Even where this is the case, the employee is also considered to be on FMLA leave. For example, if the absence is for one day, the employee is taking one day of FMLA leave and one day of (say) vacation time simultaneously. This simultaneous leave is referenced in the Shapiro policy as "FMLA

15

time running concurrently with any paid time off." Only where an employee (1) takes an FMLA-related absence and (2) does not have any paid leave time available will the employee be approved for what Shapiro designates "FMLA dock time." In other words, only in that scenario does the FMLA leave (rather than some form of paid leave) actually serve to cover the absence.

An added wrinkle in the Shapiro policy is especially relevant here. An employee who claims a form of paid leave for which they have an amount insufficient to cover the absence will be subject to discipline, regardless of whether that employee has other forms of paid leave that, if supplemented, would have covered the absence. As the FMLA Reminders Page states: "If the employee does not have the requested accrued benefit time to cover the absence, the absence will remain Unexcused (UA) whether or not it is an FMLA related absence and disciplinary action may be taken."

This policy creates the possibility that an employee taking an absence due to an approved, qualifying health condition under FMLA may still end up being charged with an unauthorized absence, if they have sufficient paid leave time available but fail to request a form or forms of paid leave that are sufficient to cover the absence.[4]

For this reason, it would be insufficient for Davis to show only that her May 12 absence was for an FMLA-related absence (i.e., that it was an absence related to an approved, qualifying health condition). She must *also* show that she was entitled to FMLA dock time to cover the absence. It is well-established that the FMLA "provides

---

[4] Davis' dispute with Shapiro policy, insofar as it allows for this particular result, is discussed below.

16

no relief unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); see also *Harrell v. U.S. Postal Service*, 445 F.3d 913, 929 (7th Cir. 2006). The harm or prejudice alleged by Davis is her discharge, precipitated by the May 12 unauthorized absence. Even if Davis was entitled to FMLA leave on May 12, she could still be charged with the unauthorized absence if she violated Shapiro policy by requesting an insufficient form paid leave time. Accordingly, in order to satisfy the entitlement element of a claim of FMLA interference, Davis must show that she was entitled to FMLA dock time on May 12 (a showing which necessarily includes a threshold showing that her May 12 absence was FMLA-related).

    FMLA-related Absence

    In arguing that Davis' May 12 absence was not FMLA-related, Defendant's contention is straightforward: Davis' morning sickness was a flare-up, and her FMLA approval, based on the medical certification form from her doctor, did not allow for coverage for flare-ups.

    Davis counters by arguing that the FMLA does not permit an employer to require that an employee provide medical certification in relation to a pregnancy. Accordingly, Davis argues, that certification may essentially be disregarded. Further, Davis argues that the FMLA statutory scheme explicitly states that an expectant mother's debilitating morning sickness is a condition that qualifies for FMLA leave. Davis also makes clear that her second argument is not contingent upon her first. In

other words, Davis asserts that she "was entitled to take FMLA leave for any pregnancy related illness whether or not the leave was consistent with her certification."

Two of the six bases for FMLA leave provided by § 2612 are "(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter[,]" and "(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.§ 2612(a)(1). In turn, § 2613 allows that "[a]n employer may require that a request for leave under subparagraph (C) or (D) of paragraph (1) or paragraph (3) of section 2612(a) of this title be supported by a certification issued by the health care provider of the eligible employee." *Id*. § 2613(a). In other words, employers may request medical certification to verify a serious health condition, but not to verify the birth of a child.

In the present case, Shapiro determined that Davis' pregnancy was a "serious health condition" under subparagraph (D), and thus required Davis to provide medical certification. Davis contends this was error because her pregnancy qualified for FMLA not under subparagraph (D), but subparagraph (A). She asserts: "Davis requested and was approved for FMLA underneath section (A) of 29 U.S.C §2612(a)(1) i.e., pregnancy."

Davis is wrong. Subparagraph (A) quite clearly contemplates the *birth* of a child. *Id*. § 2612(a)(1)(A). It contains no reference to pregnancy. Indeed, the Code of Federal Regulations (Code) establishes that "A serious health condition involving continuing treatment by a health care provider includes . . . (b) Pregnancy or prenatal care. Any period of incapacity due to pregnancy, or for prenatal care." C.F.R. § 825.115; see also

18

*Aubuchon v. Knauf Fiberglass GmbH*, 359 F.3d 950, 951 (7th Cir. 2004) ("A 'serious health condition' is sensibly defined in a regulation issued by the Department of Labor to include 'any period of incapacity due to pregnancy, or for prenatal care.'"); *Ryl-Kuchar v. Care Centers, Inc.*, 565 F.3d 1027, 1030 (7th Cir. 2009) ("Incapacity due to pregnancy is a 'serious health condition.'"). Accordingly, Shapiro's request for medical certification was in compliance with the FMLA.

Davis is correct, however, in observing that the Code explicitly holds that bouts of morning sickness are FMLA-qualifying:

> "An expectant mother may take FMLA leave before the birth of the child for prenatal care or if her condition makes her unable to work. The expectant mother is entitled to leave for incapacity due to pregnancy even though she does not receive treatment from a health care provider during the absence, and even if the absence does not last for more than three consecutive calendar days. For example, a pregnant employee may be unable to report to work because of severe morning sickness."

29 C.F.R. § 825.120.

To establish the existence of an FMLA-qualifying health condition, an employee must submit medical certification. 29 U.S.C. § 2613(a); *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997). Where intermittent leave is requested, an employer is permitted to require certification that "the employee's serious health condition, including pregnancy, . . . may result in unforeseeable episodes of incapacity."  29 C.F.R. § 825.306. Finally, the Seventh Circuit has held: "Where an employer properly requests a physician's certification under the FMLA and that certification indicates the employee is not entitled to FMLA leave, the employer does not violate the FMLA by relying upon

that certification in the absence of some overriding medical evidence." *Stoops v. One Call Commc'ns, Inc.*, 141 F.3d 309, 314 (7th Cir. 1998).

On Davis' medical certification, Dr. Mahoney indicated that Davis would not require FMLA coverage for flare-ups related to her pregnancy. Specifically, as to the question "Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions?" Dr. Mahoney checked "No." There has been no allegation that Shapiro was presented with "some overriding medical evidence" that would cause it to second-guess that certification. Accordingly, Davis' May 12 absence for morning sickness was not due "an approved, qualifying health condition," such that she would have been even potentially eligible for FMLA dock time.

That the Code expressly mentions morning sickness as a qualifying condition does not impact this conclusion. Like pregnancy itself, morning sickness is only "covered" by FMLA to the extent that it causes incapacity or renders an employee "unable to . . . work." 29 C.F.R. § 825.120. The employee's doctor is in a far better position than the employer to speak to the likelihood and degree of such flare-ups, including whether the morning sickness is likely to be of a nature that it prevents the employee from performing the functions of her position. See 29 U.S.C. § 2612(a)(1)(D). Thus, while § 825.120 of the Code allows that morning sickness may be an FMLA-qualifying condition, it cannot be read as mandating, as a matter of course, that *all* instances of morning sickness result in FMLA leave. Such a reading would result in the certification requirement, contained within the FMLA itself, being rendered

20

meaningless in regard to the specific serious health condition of morning sickness. See 29 U.S.C. § 2613(a).

Moreover, to the extent that Dr. Mahoney's certification could be deemed "wrong," the Seventh Circuit has made clear that the employee is "the person with the incentive, certainly the burden, to have it corrected." *Stoops*, 141 F.3d at 313. Despite Davis apparently having been unable to work due to her morning sickness, the record does not show that she took any steps to have her medical certification amended or corrected.

<u>Entitlement to FMLA Dock Time</u>

Even if Davis' May 12 absence was FMLA-related, she still would have been unable to invoke FMLA dock time under Shapiro's policy. In other words, her absence would still have been unauthorized.

As stated above, Shapiro's policy requires that where an employee taking an FMLA-related absence has paid leave time available, that employee must utilize the paid leave time. The evidence of record establishes, and Davis does not dispute, that Davis had sufficient paid leave available to cover her entire May 12 absence. She was thus not entitled to FMLA dock time. She would ultimately be charged with an unauthorized absence because, despite having it available, she failed to request a form or forms of paid leave that would cover the entire absence.

Davis argues that Shapiro's policy requiring the exhaustion of all paid leave time before FMLA dock time can be used "on its face violates the FMLA." She contends that the policy amounts to "a restraint, denial and interference of" her use of FMLA. Davis

points out that she "was never able to use FMLA because she had not exhausted all

paid leaves."

This argument is clearly refuted by the FMLA itself. A policy requiring

exhaustion of all paid benefits does not amount to FMLA interference. In fact, it is a

policy that the FMLA *explicitly* endorses: "An eligible employee may elect, *or an*

*employer may require* the employee, to substitute any of the accrued paid vacation leave,

personal leave, or medical or sick leave of the employee for [FMLA] leave." (Emphasis

added.) 29 U.S.C. § 2612(d)(2)(B). Likewise, the Code states:

> [T]he employer may require the employee to substitute accrued paid leave for
> unpaid FMLA leave. The term substitute means that the paid leave provided by
> the employer, and accrued pursuant to established policies of the employer, will
> run concurrently with the unpaid FMLA leave. Accordingly, the employee
> receives pay pursuant to the employer's applicable paid leave policy during the
> period of otherwise unpaid FMLA leave.

29 C.F.R. § 825.207.

The Seventh Circuit has repeatedly affirmed an employer's ability to impose

such a requirement under the FMLA. *Brotherhood of Maintenance Way Employees. v. CSX*

*Transportation, Inc.*, 478 F.3d 814, 817 (7th Cir. 2007) ("As a general principle, the FMLA

authorizes substitution of paid leave for FMLA leave. . . . Substitution can be done at

the employee's election, or the employer may require it."); *Freelain v. Village of Oak Park*,

888 F.3d 895, 901 (7th Cir. 2018) ("The law permits an employer to drain any paid leave

it provides to its employees while they use FMLA leave.").

Shapiro's FMLA policy comports with the FMLA and the Code.[5]

Davis seems to take exception to another element of Shapiro's policy. It is Shapiro's policy—independent of its FMLA policy—that employees who request an insufficient form of paid leave to cover an absence will be charged with an unauthorized absence, regardless of whether the employee has some other form of paid leave that would have been able to make up the shortfall.

In other words, Shapiro employees are required to know what leave time they have available and request it accordingly; Shapiro will not make substitutions or corrections *sua sponte* in order to cover a shortfall. Davis contends that the application of this policy in relation to an FMLA-qualifying absence amounts to interference, as it leads to the paradoxical result of an FMLA-approved employee missing work with an FMLA-qualifying condition but still being charged with an unauthorized absence.

Davis' argument "is foreclosed by a long line of Seventh Circuit decisions holding that employers do not interfere with their employees' FMLA rights when they require compliance with their internal policies[,] even if their policies impose stricter notice requirements than the FMLA itself." *McKenzie v. Seneca Foods Corp.*, 2017 WL 1155966, at *4 (W.D. Wis. Mar. 27, 2017) (collecting Seventh Circuit cases). The Code itself provides that "An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. § 825.302(d); see also *Brown v. Auto. Components Holdings, LLC*, 622

---

[5] The court notes that Burns' substantive claim would fail on this same ground, as it was based entirely on the notion that Shapiro's exhaustion policy amounted to FMLA interference.

23

F.3d 685, 691 (7th Cir. 2010) ("[T]he regulations expressly permit employers to require compliance with their 'usual and customary notice and procedural requirements for requesting leave,' and our circuit has recognized an employer's right to terminate employees on this basis.").

Requiring employees to request the appropriate form of paid leave, at risk of discipline, was the usual policy of Shapiro. In fact, the FMLA Reminders page expressly contemplates that if an employee violates that policy "the absence will remain Unexcused (UA) *whether or not it is an FMLA related absence*." (Emphasis added.) The application of Shapiro's usual procedural policies in the instant case does not amount to FMLA interference. See *Brown*, 622 F.3d at 691.

In summary, even assuming that Davis satisfied the notice requirement, she has failed to demonstrate that her illness on May 12 qualified her for FMLA leave or that she was entitled to FMLA dock time to cover that absence. Because Davis has therefore failed to satisfy each element of her FMLA interference claim (see *Burnett*, 472 F.3d at 477), summary judgment in favor of Defendant is GRANTED as to Plaintiff Davis.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff Antionette Burns' claim in the Fourth Amended Complaint is DISMISSED for lack of standing.

(2) Defendant's Motion for Summary Judgment (#58) is GRANTED with respect to the claim raised by Plaintiff Dyamond Davis in the Fourth Amended Complaint.

(3) This matter is terminated.

ENTERED this 31st day of May, 2022.

<u>s/Colin Stirling Bruce</u>
COLIN S. BRUCE
U.S. DISTRICT JUDGE